**UNITED STATES DISTRICT COURT**
**NOTHERN DISTRICT OF FLORIDA**
**PANAMA CITY DIVISION**

**MICHAEL PARKINS,**                                   **CASE NO.**

      **Plaintiff,**

**v.**

**JOHN PHELAN, in his official capacity**
**as SECRETARY, U.S. DEPARTMENT**
**OF THE NAVY,**

      **Defendant.**
_____/

## COMPLAINT

Plaintiff, MICHAEL PARKINS, hereby sues Defendant, JOHN PHELAN, in his official capacity as SECRETARY, U.S. DEPARTMENT OF THE NAVY, and alleges:

## JURISDICTION

1.    This is an action brought under Title VII of the Civil Rights Act of 1964, codified at 42 U.S.C. §2000e et seq., 42 U.S.C. §1981a and the Rehabilitation Act, codified at 29 U.S.C. §791, et seq. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights claim jurisdiction).

2.    This is an action involving claims which are, individually, in excess of Seventy- Five Thousand Dollars ($75,000.00).

## THE PARTIES

3.      At all times pertinent hereto, Plaintiff, MICHAEL PARKINS, has been a resident of the State of Florida and employed by Defendant.  Plaintiff is a member of a protected class because of his race and his actual or perceived physical or mental disability and/or record of impairment of which Defendant is aware. Further, Plaintiff reported and objected to Defendant's unlawful employment practices and has been retaliated against thereafter.

4.      At all times pertinent hereto, Defendant, JOHN PHELAN, in his official capacity as SECRETARY, U.S. DEPARTMENT OF THE NAVY, has been organized and existing under the laws of the United States.  At all times pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above.  Defendant is Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5.      Plaintiff has satisfied all conditions precedent to bringing this action.

## STATEMENT OF THE ULTIMATE FACTS

6.      Plaintiff began his employment with Defendant in or around February 2004, and, at all times pertinent to this action, worked as a Firefighter and Emergency Medical Technician ("EMT") at Defendant's Naval Support Activity

("NSA") facility in Panama City, Florida until his wrongful termination on August 21, 2023.

7.    Plaintiff was subjected to disparate treatment, different terms and conditions of employment, and held to a different standard because of his race and his actual or perceived physical or mental disability and/or record of impairment. Plaintiff has been retaliated against after reporting discrimination.

8.    The disparate treatment and retaliation came at the hands of specifically but not limited to Commander Keith Foster, white, Assistant Commander Christine Cairoli, white, Fire Chief Thad Mapledoram, white, Assistant Fire Chief Derric Barber, white, and Captain Emily Gray, white.

9.    Between 2021 and 2023, Plaintiff reported, objected to and filed discrimination and retaliation claims and lawsuits against Defendant.

## BACKGROUND

10.    On or around January 30, 2022, Plaintiff slipped while on duty and suffered a work-related foot injury. The injury was confirmed to be a fracture by Dr. Sagar Shah at the Naval Branch Health Clinic during follow-up care on March 9, 2022, and April 25, 2022. Later, on March 30, 2022, Dr. Shah completed an OWCP-5c form restricting Plaintiff to no prolonged standing or walking beyond one hour, no driving more than 10–15 minutes, no lifting more than 20 pounds, and requiring frequent breaks. Plaintiff promptly reported the injury under the Federal Employees'

Compensation Act (FECA). As a result, Plaintiff suffered from a disabling condition. He was able to perform the essential functions of his position with or without accommodations.

11. On or around February 1, 2022, Plaintiff submitted a Form CA-1 (Federal Employee's Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation)/Worker's Compensation claim (claim #550176690) to Barber. Barber also prepared a Medical Referral Form on February 2, 2022, but failed to process it timely. Instead of placing Plaintiff on light duty or engaging in the reasonable accommodation process required under the ADA/Rehabilitation Act, Defendant placed him on traumatic injury leave until February 11, 2022.

12. Plaintiff returned to work on February 11, 2022, but still had pain in his foot, which he told Barber about. Plaintiff also provided Defendant with a medical note from Dr. Shah.

13. Barber failed to timely submit Plaintiff's CA-1 to the Commander, leading Plaintiff to request this documentation repeatedly, directly from Navy Installations Command (CNIC) Human Resources (HR) Specialist Maria Darragh, white, via email. The form was not received until February 16, 2022, when Darragh acknowledged the receipt, well beyond the 10-day statutory deadline. Because of this delay, Plaintiff's continuation of pay did not begin until March 1, 2022, forcing Plaintiff to take out two personal loans totaling $3,400 to cover living expenses. In

contrast, in or around early 2022, Plaintiff's white coworker, Firefighter Matt Koenig, also sustained a foot injury, and his CA-1 was processed promptly without delay. In a phone conversation with Plaintiff, Koenig informed Plaintiff there was no delay in the submission of Koenig's CA- 1 Form.

14. On February 15, 2022, Barber required Plaintiff to participate in mandatory "gym time," despite Plaintiff's documented foot injury and medical restrictions prohibiting prolonged standing or climbing. "Gym time" consisted of required physical exercise intended to maintain firefighter fitness. In an effort to comply, Plaintiff limited himself to upper-body exercises; however, even this activity aggravated his foot injury and caused significant emotional distress, particularly in light of the prior discriminatory treatment he had experienced concerning gym requirements. Mapledoram was also aware of Barber's actions towards Plaintiff yet took no actions to intervene on Plaintiff's behalf.

15. Concerned about being forced into activity against medical advice, Plaintiff contacted Naval Air Station Jacksonville Fire and Emergency Services (NAS JAX F&ES) for guidance. He spoke with an unidentified Station Lieutenant, who advised him to raise the issue with his union representative. Shortly thereafter, Barber verbally counseled Plaintiff for contacting NAS JAX and later used the incident as a basis for discipline. By way of example, Plaintiff requested twelve hours of leave without pay (LWOP) that same day, which Barber approved.

5

However, on March 9, 2022, Mapledoram charged Plaintiff with twelve hours of Absent Without Leave (AWOL) for that same period, despite Barber's prior approval.

16.    On February 28, 2022, Plaintiff filed a timely Equal Employment Opportunity (EEO) complaint alleging race discrimination, disability discrimination, and reprisal. The complaint specifically raised (1) denial of medical leave, (2) disparate enforcement of gym policies, and (3) retaliation in the form of unwarranted counseling and AWOL charges.

17.    On or around April 12, 2022, HR Specialist Lisa Morgan emailed Plaintiff attaching a Light Duty Offer effective April 13, 2022. The offer reassigned him from firefighting to administrative duties including training, data entry, and office work. These tasks were inherently computer-based and could reasonably have been performed remotely, but Defendant insisted on an in-person presence. Plaintiff repeatedly asked whether he was qualified to complete this work remotely and received no response. Plaintiff immediately emailed Barber and Morgan questioning the absence of a light duty policy and asking whether he was being "ordered" to return.

18.    On April 21, 2022, Plaintiff submitted a formal request for reasonable accommodation (RA) by email to Barber and Mapledoram. Plaintiff specifically requested telework or sedentary duty consistent with restrictions from Dr. Shah, who

6

had documented that Plaintiff could not stand for more than ten minutes, drive, or carry objects. Plaintiff also requested a government computer so he could complete administrative tasks from home. The very duties Defendant assigned—training, data entry, and administrative work—were capable of being completed on a computer from home, yet Defendant refused to consider telework or even clarify whether Plaintiff was qualified to do so. Based on Plaintiff's skills and the nature of the duties, remote completion was possible and would not have been an unreasonable hardship on Defendant.

19.   That same day, Morgan sent Plaintiff a second Light Duty Offer restating training, data entry, and administrative work, and directing him to report April 22, 2022. Plaintiff replied that he would take LWOP until he could sign and return the forms but reiterated his request for telework. Defendant did not process this RA request or convene an interactive meeting.

20.   On April 22, 2022, Barber forwarded Plaintiff's RA paperwork and copied RA Coordinator (RAC) Severiano Melendez, Hispanic, and Mapledoram.

21.   On or around April 25, 2022, Dr. Shah updated Plaintiff's restrictions to include no standing more than 15 minutes, no climbing, and the use of a scooter for mobility. Defendant ignored these restrictions and never convened interactive meetings.

22.    On that same day, Melendez instructed Barber by email that he had used the wrong RA form and must consult RAC before sending RA materials to employees. Barber acknowledged this on April 26, 2022, but never followed up with Plaintiff to provide the correct forms or schedule a meeting. As a result, Defendant later claimed it had "never received" Plaintiff's RA forms, though Barber's mishandling prevented proper submission.

23.    On April 29, 2022, the Department of Labor (DOL) sent a letter explicitly deeming Defendant's light duty offers "not suitable" for Plaintiff. On May 4, 2022, Morgan emailed Plaintiff another Light Duty Offer Form. The assignment again reassigned him from firefighting to training modules, data entry, and office-based work. Once again, these duties could reasonably have been performed through telework, but Defendant neither confirmed nor denied Plaintiff's inquiries about remote eligibility. The offer cited his restrictions as seated more than 70% of each hour, no bending, no standing/walking beyond one hour, no lifting/pulling. Plaintiff declined, explaining that while labeled "light duty," it still required movement inconsistent with his physician's sedentary restrictions.

24.    On May 5, 2022, Dr. Shah submitted another OWCP-5c form reiterating sedentary restrictions. Plaintiff emailed Morgan, Mapledoram, and Barber, stating he would not sign the Light Duty Offer because "light duty is not the same as sedentary duty legally."

25.    On May 6, 2022, Morgan emailed Plaintiff explaining that the DOL classifies all modified duty as "light duty" despite a letter dated that same day, May 6, 2022, from the DOL stating that the light duty assignment/position that Defendant offered was not suitable for Plaintiff. The DOL also confirmed that Plaintiff could not use public transportation due to his injury. Defendant assured Plaintiff that transportation would be provided by sending someone to pick him up but later failed to provide consistent assistance.

26.    May 18, 2022, the Agency referred Plaintiff to the DOL Office of Workers' Compensation Programs (OWCP) for Vocational Rehabilitation, citing concerns about his ability to return to firefighting.

27.    On May 16, 2022, Plaintiff was suspended for 14 days (through May 29, 2022) due to AWOL charges that Barber had issued for leave previously approved.

28.    On May 25, 2022, Plaintiff was pressured by the Navy's EEO counselor, Mickla Adams, African American, to withdraw his disability claim. Plaintiff complied under instruction but never voluntarily abandoned the claim. These matters were included in the November 14, 2022, Final Agency Decision, and the pattern of retaliation, denial of accommodations, and misuse of AWOL charges continued into 2023.

9

## TIMELY CLAIMS

29.    On July 25, 2022, Plaintiff submitted a second RA request by email to Barber and Mapledoram, again seeking sedentary/light duty assignments supported by updated medical documentation. Defendant ignored the request and provided no written response.

30.    On or around September 28, 2022, Plaintiff submitted a third RA request by email to Barber and Mapledoram, again requesting telework and modified duties consistent with his physician's restrictions. That same day, HRS Morgan emailed Plaintiff another Light Duty Offer with restrictions: seated at least 30% of each hour, no driving beyond 30 minutes, walking/standing up to eight hours, no climbing, kneeling, or lifting less than 20 lbs. Duties listed again included training, data entry, and administrative work. Despite Plaintiff's repeated emphasis that these duties could be performed remotely, Defendant again refused to consider telework or answer his questions about whether it was possible.

31.    On September 29, 2022, RMO2 notified RMO1 that Plaintiff failed to report and marked him unauthorized. On September 30, 2022, RMO1 emailed that Plaintiff formally declined the offer, reiterating that it did not comply with his need for sedentary duty.

32.    On or around October 26, 2022, Plaintiff waited outside his residence as directed to return to work, but no one arrived to transport him to work. Despite

Defendant's assurance that transportation would be provided in lieu of public transit, the missed pickup was later cited against Plaintiff as part of "excessive absence."

33.   Following the October 26, 2022, missed transportation incident, Melendez instructed Plaintiff to await further contact from Barber regarding his next steps and possible work assignment. During this period, Plaintiff continued under the care of his treating physician, Dr. Shah, and remained in communication with the DOL, which had not yet cleared him for any light-duty assignment.

34.   On or around August 1, 2022, Plaintiff filed another EEO grievance. Plaintiff's grievance alleged ongoing retaliation, misuse of AWOL, and denial of reasonable accommodation. He was interviewed on October 12, 2022, but no corrective action followed.

35.   On January 9, 2023, Barber emailed Plaintiff requesting an update on his medical condition. Plaintiff responded that his condition remained unchanged, that all physician reports had been submitted to the DOL, and that no additional documentation had been provided clearing him to return to duty. Plaintiff was left in limbo, awaiting DOL's determination regarding suitable work and Defendant's compliance with the accommodation process.

36.   On May 30, 2023, Defendant issued Plaintiff a Return to Duty Letter, directing him to report by June 7, 2023, or immediately contact Barber if unable to do so. The letter also instructed Plaintiff to submit updated medical documentation

11

within 15 days, describing the history of his medical condition, clinical findings, prognosis, restrictions, and likelihood of incapacitation, and warned that failure to comply could result in removal from federal service. Plaintiff never received this letter until it was attached as an enclosure to his July 5, 2023, Notice of Proposed Removal.

37.    On July 5, 2023, Plaintiff received via email a Notice of Proposed Removal from Barber, citing "Excessive Absenteeism." The notice stated that Plaintiff had been absent a total of 5,382.5 hours since February 2022 (including 4,656 OWCP hours, 12 AWOL hours, 144 suspension hours, 25 traumatic injury leave hours, 425.5 additional traumatic injury leave hours, and 120 advanced sick leave hours). The Notice relied on the May 30, 2023 Return to Duty Letter, asserting that Plaintiff had acknowledged receipt and then declined to return to duty by June 7, 2023, despite not having actually received the letter until July.

38.    On July 11, 2023, Plaintiff submitted a response explaining that he could not have complied with the June 7, 2023, deadline because this was the first time he had seen the Return to Duty Letter, and that Defendant's claim of prior receipt was false. Plaintiff also reiterated his ongoing medical restrictions and pending DOL review.

39.    On August 21, 2023, Defendant removed Plaintiff from federal service, citing "excessive absence." Those absences were caused by Defendant's refusal to

process Plaintiff's accommodation requests of telework and its unnecessary isolation of Plaintiff. By denying telework for administrative and training duties that could reasonably have been completed over the computer, Defendant effectively forced Plaintiff to be absent instead of allowing him to perform his job remotely within his restrictions. Meanwhile, white comparators, such as Firefighter Pierre Carlos, Hispanic/Latino, who retained employment after a DWI and suspension of his driver's license, were accommodated and retained despite Defendant's policy stating employees should maintain a valid driver's license. Defendant even arranged rides and altered the vehicle-driving rotation so Carlos could remain in position.

40.    Plaintiff has retained the undersigned to represent his interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the statutes referenced above.

**COUNT I**
**RACE DISCRIMINATION**

41.    Paragraphs 1 through 40 are re-alleged and incorporated herein by reference.

42.    This is an action against Defendant for discrimination based upon race brought under 42 U.S.C. §2000e et seq.

43.    Plaintiff has been the victim of discrimination on the basis of his race in that he was treated differently than similarly situated white employees of

Defendant and has been subject to hostility and poor treatment on the basis, at least in part, of his race.

44.    Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

45.    Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

46.    Defendant's known allowance and ratification of these actions and inactions created, perpetuated, and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

47.    In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a race-based nature and in violation of the laws set forth herein.

48.    The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant and impaired Plaintiff's right to make and enforce contracts.

49.    The events set forth herein led, at least in part, to Plaintiff's termination.

14

50.    Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race in violation of 42 U.S.C. §2000e et seq.

51.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive relief.

**COUNT II**
**<u>DISABILITY DISCRIMINATION</u>**

52.    Paragraphs 1through 40 above are re-alleged and incorporated herein

53.    This count sets forth a claim for discrimination on the basis of Plaintiff's actual or perceived mental or physical disability and/ or record of impairment, brought under 29 U.S.C. §791, et seq.

54.    Plaintiff has been a victim of discrimination on the basis of actual or perceived disability and/or record of impairment. During the course of Plaintiff's employment by Defendant, Plaintiff was treated differently than similarly situated employees who are non-disabled, not perceived as disabled, or do not have a comparable record of impairment to Plaintiff.

15

55.    Defendant is liable for the differential treatment and its refusal to accommodate Plaintiff and engage in the interactive process with him, which adversely affected a term, condition, or privilege of Plaintiff's employment with Defendant as those terms are used in the applicable statutes.

56.    Defendant controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

57.    In essence, the actions of agents of Defendant, which were each condoned and/or ratified by Defendant, were disability/perceived disability-based and in violation of the laws set forth herein.

58.    The discrimination complained of herein affected terms, conditions, and privileges of Plaintiff's continued employment by Defendant. The events set forth herein led, at least in part, to Plaintiff being assaulted, being placed in isolation in the workplace, and his different types of leave being exhausted.

59.    Defendant's acts and omissions constituted intentional discrimination and unlawful employment practices based upon disability or perceived disability, under the laws cited herein.

60.    As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and

16

future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are occurring at present, and likely will continue into the future. Plaintiff is entitled to equitable/injunctive relief.

## COUNT III
## RETALIATION

61.    Paragraphs 1 through 41 are re-alleged incorporated herein by reference.

62.    This is an action against Defendant for unlawful retaliation after Plaintiff reported unlawful employment practices adversely affecting his under 42 U.S.C. § 2000e et seq.

63.    Defendant is an employer as that term is used under the applicable statutes referenced above.

64.    The foregoing unlawful actions by Defendant were purposeful.

65.    Plaintiff voiced opposition to unlawful employment practices during his employment with Defendant and has been the victim of retaliation thereafter.

66.    The events set forth herein have led, at least in part, to adverse actions against Plaintiff.

17

67.    Plaintiff is a member of a protected class because he reported unlawful employment practices and has been the victim of retaliation thereafter. There is thus a causal connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

68.    As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, lost opportunities, loss of capacity for the enjoyment of life, and other tangible and intangible damages.  These damages are continuing and are permanent.  Plaintiff is entitled to injunctive/equitable relief.

## COUNT IV
## RETALIATION

69.    Paragraphs 1 through 39 above are re-alleged and incorporated.

70.    Defendant is an employer as that term is used under the applicable statutes referenced above.

71.    This count sets forth a claim for unlawful retaliation under 29 U.S.C §791 et seq.

72.    Defendant retaliated against Plaintiff for opposing Defendant's unlawful acts or practices or because Plaintiff made a charge, testified, assisted, or

participated in any manner in an investigation, proceeding, or hearing and adverse employment actions were then taken against Plaintiff.

73. Alternatively, Defendant coerced, intimidated, threatened, or interfered with Plaintiff's rights as a result of Plaintiff exercising or enjoying Plaintiff's rights or encouraging another to do so.

74. The foregoing unlawful actions by Defendant were purposeful.

75. Because of Plaintiff's reporting Defendant's unlawful behavior, Plaintiff was the victim of retaliation, as relayed in part above, including without limitation Plaintiff's Plaintiff being assaulted, being placed in isolation in the workplace, and his different types of leave being exhausted.

76. Plaintiff is a member of a protected class after reporting Defendant's unlawful employment practices and Plaintiff was a victim of retaliation thereafter. There is a causal connection between the reporting of the unlawful employment practices and the adverse employment actions taken thereafter.

77. As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages have occurred in the past, are occurring at present, and will likely continue into the future. Plaintiff is entitled to equitable/injunctive relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a)    that process issue and this Court take jurisdiction over this case;

(b)    that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)    enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)    enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)    enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)    award Plaintiff interest where appropriate; and

(g)    grant such other further relief as being just and proper under the circumstances.

20

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

Dated this 17th day of September, 2025.

Respectfully submitted,

/s/ Marie A. Mattox
Marie A. Mattox [FBN 0739685]
MARIE A. MATTOX, P.A.
203 North Gadsden Street
Tallahassee, FL 32301
Telephone:  (850) 383-4800
Facsimile:   (850) 383-4801

ATTORNEYS FOR PLAINTIFF